UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL KENT,<br><br>  Plaintiff,<br><br>  v.<br><br>CORELOGIC, INC., FRANK MARTELL, W. STEVE ALBRECHT, DOUGLAS C. CURLING, JOHN C. DORMAN, PAUL F. FOLINO, WENDY LANE, CLAUDIA FAN MUNCE, PAMELA H. PATENAUDE, VIKRANT RAINA, J. MICHAEL SHEPHERD, JAYNIE MILLER STUDENMUND, and HENRY W. WINSHIP,<br><br>  Defendants. | Case No._____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Michael Kent ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action on his own behalf and on behalf of all other public stockholders of CoreLogic, Inc. ("CoreLogic" or the "Company") against the members of CoreLogic's board of directors (the "Board" or "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the Action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which CoreLogic will be acquired by funds managed by Stone Point Capital ("Stone Point")

and Insight Partners ("Insight") through their subsidiaries Celestial-Saturn Parent Inc. ("Parent") and Celestial-Saturn Merger Sub Inc. ("Acquisition Sub") (the "Proposed Transaction").1

2. On February 4, 2021, CoreLogic announced that it had entered into an Agreement and Plan of Merger dated February 4, 2021 (the "Merger Agreement") pursuant to each CoreLogic stockholder will be entitled to receive $80.00 in cash for each share of CoreLogic common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $6 billion.

3. On March 1, 2021, CoreLogic filed a Schedule 14A Preliminary Proxy Statement (the "Proxy") with the SEC. In recommending that Company stockholders approve the Proposed Transaction, the Proxy omits or misrepresents material information. Specifically, the Proxy fails to disclose critical details concerning, among other things: (a) the Company's financial projections and the financial analyses supporting the fairness opinion provided by the Board's financial advisor, Evercore Group L.L.C. ("Evercore"); (b) the background of the Proposed Transaction; and (c) potential conflicts of interest faced by Company insiders and Evercore. Defendants authorized the issuance of the false and misleading Proxy in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

---

[1] Non- party Stone Point is a financial services-focused private equity firm based in Greenwich, Connecticut. Insight is a global venture capital and private equity firm headquartered in New York, New York. Parent is a Delaware corporation affiliated with (a) Insight Partners XI, L.P., Insight Partners (Delaware) XI, L.P., Insight Partners (Cayman) XI, L.P., Insight Partners XI (Co-Investors), L.P., Insight Partners XI (Co-Investors) (B), L.P. and Insight Partners (EU) XI, S.C.Sp. (the "Insight Funds") and (b) Trident VIII, L.P., Trident VIII Parallel Fund, L.P., Trident VIII DE Parallel Fund, L.P. and Trident VIII Professionals Fund, L.P. (the "Stone Point Funds").

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a stockholder of CoreLogic

10. Defendant CoreLogic is a Delaware corporation, with its principal executive offices located at 40 Pacifica, Irvine, California 92618. CoreLogic's common stock trades on the New York Stock Exchange under the ticker symbol "CLGX."

11. Defendant Frank Martell ("Martell") is and has been President, Chief Executive Officer ("CEO"), and a director of the Company since March 2017. He previously served as the

Company's Chief Financial Officer from August 2011 to April 2016 and as Chief Operating Officer from July 2014 to March 2017.

12. Defendant W. Steve Albrecht ("Albrecht") is and has been a director of the Company since November 2020.

13. Defendant Douglas C. Curling ("Curling") is and has been a director of the Company since 2012.

14. Defendant John C. Dorman ("Dorman") is and has been a director of the Company since 2012.

15. Defendant Paul F. Folino ("Folino") is Chairman of the Board and has been a director of the Company since 2011.

16. Defendant Wendy Lane ("Lane") is and has been a director of the Company since November 2020.

17. Defendant Claudia Fan Munce ("Munce") is an has been a director of the Company since 2017.

18. Defendant Pamela H. Patenaude ("Patenaude") is and has been a director of the Company since June 2020.

19. Defendant Vikrant Raina ("Raina") is and has been a director of the Company since 2017.

20. Defendant J. Michael Shepherd ("Shepherd") is and has been a director of the Company since 2019.

21. Defendant Jaynie Miller Studenmund ("Studenmund") is and has been a director of the Company since 2012.

22. Defendant Henry W. Winship ("Winship") is and has been a director of the Company since November 2020.

23.     Defendants identified in paragraphs 11-22 are referred to herein as the "Board" or the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

**The Proposed Transaction**

24.     On February 4, 2021, CoreLogic announced in relevant part:

IRVINE, Calif. & GREENWICH, Conn.--CoreLogic® (NYSE: CLGX), a leading global property information, analytics and data-enabled solutions provider, today announced that the company's Board of Directors unanimously approved a definitive merger agreement under which funds managed by Stone Point Capital and Insight Partners will acquire all outstanding shares of CoreLogic for $80 per share in cash, representing an equity value of approximately $6.0 billion and a premium of 51% to CoreLogic's unaffected share price on June 25, 2020.

CoreLogic Chairman Paul Folino said, "This is a significant milestone for CoreLogic and a very positive outcome for our shareholders who will receive exceptional value for their shares in cash with a high degree of regulatory certainty and a closing expected in the near term.  The transaction is the culmination of our Board's extensive review of strategic alternatives, which included engaging with numerous potential buyers."

CoreLogic President and CEO Frank Martell said, "Stone Point and Insight Partners are highly respected investors who recognize the value and potential of CoreLogic's digital content, solutions and market-leading platforms that power the housing economy.  We look forward to working closely with Stone Point and Insight to build on our record financial and operating performance and accelerate our digital transformation and growth."

Chuck Davis, CEO of Stone Point Capital, said, "CoreLogic is a mission critical vendor and data provider across industry sectors in which Stone Point has specialized over the past 20 years, including mortgage, residential real estate and P&C insurance.  CoreLogic's proprietary data assets are increasingly important to its customers, and we look forward to leveraging our network within the broader financial services industry to support the company's next phase of growth."

"At Insight Partners we focus on partnering with clear technology leaders that define and transform their markets through world-class software and data," said Deven Parekh, Managing Director at Insight Partners.  "What we found in CoreLogic is a market leader with a long history of serving customers with powerful data technology and a future vision to innovate across the real estate ecosystem.  We are excited to support CoreLogic in its next chapter of transformational growth."

The transaction will be financed through a combination of committed equity financing provided by funds managed by Stone Point Capital and Insight Partners, as well as committed debt financing provided by J.P. Morgan Securities LLC. The transaction is expected to close in the second quarter of 2021 subject to shareholder approval, regulatory approvals, and other customary closing conditions.

**The Proxy Contains Material Misstatements and Omissions**

25. The defendants filed a materially incomplete and misleading Proxy with the SEC and disseminated it to CoreLogic's stockholders. The Proxy misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction or seek appraisal.

26. Specifically, as set forth below, the Proxy fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (a) the Company's financial projections and the financial analyses supporting the fairness opinion provided by the Board's financial advisor, Evercore; (b) the background of the Proposed Transaction; and (c) potential conflicts of interest faced by Company insiders and Evercore.

*Material Omissions Concerning the Company's Financial Projections and Evercore's Financial Analyses*

27. The Proxy omits material information regarding the Company's financial projections, including failing to disclose the line items underlying management's "Case A" and "Case B" projections for unlevered free cash flow.

28. The Proxy fails to disclose all material information pertaining to Evercore's fairness opinion and the various valuation analyses it performed in support thereof. The absence of this information precludes CoreLogic's public stockholders from fully understanding Evercore's analyses. This, in turn, precludes from being able to fairly determine what weight, if any, to place on Evercore's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

29. First in this regard, the Proxy fails to disclose: (a) the Company's terminal year estimate of the unlevered, after-tax free cash flows for each of the Case A and Case B projections; (b) CoreLogic's terminal value; (c) the inputs and assumptions underlying the discount rates ranging from 8.00% to 9.00%; (d) CoreLogic's estimated net debt; and (e) CoreLogic's outstanding shares on a fully diluted basis as utilized in Evercore's *Discounted Cash Flow Analysis*.

30. With respect to Evercore's *Selected Public Company Trading Analysis*, the Proxy similarly fails to disclose: (a) the Company's Adjusted EPS for fiscal year 2021 utilized in the analysis; (b) the individual multiples and metrics for the companies observed in the analysis; (c) CoreLogic's estimated net debt; and (d) CoreLogic's outstanding shares on a fully diluted basis.

31. With respect to Evercore's *Equity Research Analyst Price Targets* analysis, the Proxy fails to disclose: (a) the individual price targets observed in the analysis; and (b) the sources thereof.

32. Without such undisclosed information, CoreLogic stockholders cannot evaluate for themselves whether the financial analyses performed by Evercore were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Evercore's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

33. The omission of this material information renders the statements in the "Projections Prepared by CoreLogic's Management" and "Opinion of CoreLogic's Financial Advisor" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background of the Proposed Transaction*

34. The Proxy fails to disclose material information concerning the background of the Proposed Transaction, including the terms of the confidentiality agreements the Company entered into with "6 counterparties or groups of counterparties, comprised of 10 individual strategic or financial counterparties." *See* Proxy at 61. Perhaps even more critically, the Proxy fails to disclose whether the confidentiality agreements included standstill provisions or "don't-ask, don't-waive" ("DADW") standstill provisions that are still in effect and presently precluding any potential counterparty from submitting a topping bid for CoreLogic.

35. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for CoreLogic. If the potential acquirer's confidentiality agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (a) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (b) being released from the agreement, which if action has been done, is omitted from the Proxy.

36. Any reasonable CoreLogic stockholder would deem the fact that a likely topping bidder may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

37. The omission of this material information renders the statements in the "Background of the Merger" section of the Proxy false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Company Insiders' Potential Conflicts of Interest*

38. The Proxy fails to disclose material information concerning the potential conflicts of interest faced by the Company's insiders, including whether any of Stone Point and Insight's

8

indications of interest mentioned management retention or participation in the combined company and the terms thereof.

39. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for CoreLogic's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40. The Proxy also fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisor, Evercore, including certain fees received from the Company for services Evercore performed other than in connection with the Proposed Transaction.

41. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

42. The omission of this information renders the statements in the "Background of the Merger," "Interests of the Directors and Executive Officers of CoreLogic in the Merger," and "Opinion of CoreLogic's Financial Advisor" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act.

43. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of CoreLogic will be unable to make a sufficiently informed voting or appraisal decision in connection with the

Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

44. Plaintiff repeats all previous allegations as if set forth in full.

45. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including the key inputs and assumptions underlying the valuation analyses prepared by Evercore in connection with the rendering of its fairness opinion in support of the Proposed Transaction; and material information concerning the sale process leading up to the Proposed Transaction, as well as potential conflicts affecting the deal. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

48. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49.     Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

50.     Plaintiff repeats all previous allegations as if set forth in full.

51.     The Individual Defendants acted as controlling persons of CoreLogic within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of CoreLogic, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy.

54. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, CoreLogic stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of CoreLogic, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to CoreLogic stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 30, 2021

**LONG LAW, LLC**

By: */s/ Brian D. Long*

Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*